ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| OBED COLÓN CRUZ<br><br>Apelante<br><br>V.<br><br>METROHEALTH, INC. H/N/C HOSPITAL METROPOLITANO; ASEGURADORA "ABC"; PERSONAS "A" A LA "Z"<br><br>Apelada | KLAN202400156 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso Número: SJ2021CV07580<br><br>Sobre: Discrimen en el empleo por razón de edad (Ley Núm. 100 de 30 de junio de 1959) Despido injustificado (Ley Núm. 80 de 30 de mayo de 1976); Honorarios de abogado (Ley Núm. 402 de 12 de mayo de 1950); Procedimiento especial de carácter sumario (Ley Núm. 2 De 17 de octubre de 1961) |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico a 30 de abril de 2024.

Comparece la parte demandante-apelante, Obed Colón Cruz (en adelante, "señor Colón Cruz" o "Apelante") mediante recurso de *Apelación* y solicita que revisemos la *Sentencia* emitida el 17 de enero de 2024 y notificada el 18 del mismo mes y año por el Tribunal de Primera Instancia, Sala de San Juan (en adelante, "TPI"). Mediante el referido dictamen, el TPI declaró Ha Lugar una moción de sentencia sumaria instada por Metrohealth Inc. h/n/c Hospital Metropolitano (en adelante, "Hospital Metropolitano" o "Apelado").

Por los fundamentos que exponemos a continuación, se *Confirma* la *Sentencia* apelada.

## I.

El señor Colón Cruz comenzó a laborar en el Hospital Metropolitano el 27 de mayo de 1998 como Técnico de Farmacia. A partir de junio de 2016, comenzó a desempeñarse como único Agente Comprador IPD en Farmacia. El 1 de febrero de 2021, el Apelante fue cesanteado de su empleo.

Así, pues, el 17 de noviembre de 2021, el señor Colón Cruz presentó una *Querella* en contra del Hospital Metropolitano por despido injustificado y discrimen en el empleo por razón de edad, al amparo del procedimiento sumario que dispone la Ley Núm. 2 de 17 de octubre de 1961.

El procedimiento fue convertido a ordinario mediante Orden dictada verbalmente durante la Vista celebrada el 8 de febrero de 2022.

Luego de varios trámites, el 8 de febrero de 2023, las partes presentaron el *Informe Preliminar de Conferencia con Antelación a Juicio*. En dicho Informe, el señor Colón Cruz desistió de la reclamación sobre discrimen por edad. Además, las partes alcanzaron un total de veintiún (21) estipulaciones de hechos. En lo aquí pertinente, estipularon:

> 10. Durante el año 2020 el Hospital Metropolitano recibió fondos provistos por el Gobierno Federal por la pandemia del COVID-19. [...]
>
> 19. En el 2020, el Hospital Metropolitano tuvo problemas en el volumen de servicios. [...]

El 13 de marzo de 2023, el Hospital Metropolitano presentó una *Moción de Sentencia Sumaria* en la cual solicitó la desestimación de la Querella. En particular, sostuvo que, como consecuencia del Covid-19, las visitas de los pacientes y la demanda de los servicios en el Hospital disminuyeron. Expuso que, a inicios de la pandemia, el Hospital recibió ayudas federales que le permitieron mantener a sus empleados activos, sin tener que recurrir a cesantías. No

obstante, arguyó que, para comienzos del 2021, no anticipaba recibir las referidas ayudas y recurrió a tomar medidas para mitigar el impacto operacional y financiero que enfrentaba. Además, señaló que el 1 de febrero de 2021 cesanteó a aproximadamente veinte (20) empleados, incluyendo al señor Colón Cruz, cuya posición fue eliminada de la operación del Hospital. Por ello, aseveró que no existía controversia respecto a que el despido fue justificado.

En reacción a la solicitud de sentencia sumaria interpuesta por el Hospital Metropolitano, 12 de mayo de 2023, el señor Colón Cruz instó una *Oposición a Solicitud de Sentencia Sumaria*. En síntesis y atinente a la controversia ante nos, arguyó que el Hospital descansó en la presentación de prueba de referencia para sustentar sus alegaciones. Particularmente, sostuvo que la declaración jurada de la señora Deborah Acevedo Santos, Directora Ejecutiva del Hospital Metropolitano, no podía ser utilizada para certificar la autenticidad de los documentos presentados por el Apelado como récords de negocios, conforme dispone la Regla 805 (F) de Evidencia, 32 LPRA Ap. VI, R. 805 (F).

Por su parte, el 18 de mayo de 2023, el Hospital Metropolitano presentó una *Réplica a Oposición a Moción de Sentencia Sumaria* en la que expuso que el señor Colón Cruz admitió la mayoría de los hechos esenciales y pertinentes propuestos en la moción de sentencia sumaria, los cuales eran suficientes para que procediera a dictarse la sentencia sumariamente. Además, expuso que no existía una controversia real sobre la razón del despido.

El 20 de junio de 2023, el señor Colón Cruz presentó una *Dúplica* mediante la cual, en apretada síntesis, arguyó que, según los datos financieros y económicos del Hospital Metropolitano, no se produjo una reducción en el volumen de producción.

El TPI dictó una *Sentencia* el 17 de enero de 2024, notificada el 18 de enero de 2024 en la cual declaró Ha Lugar la moción de

sentencia sumaria presentada por el Hospital Metropolitano. En esta, realizó las siguientes determinaciones de hechos:

1. El Sr. Obed Colón Cruz comenzó a trabajar en el Hospital Metropolitano el 27 de mayo de 1998, como Técnico de Farmacia bajo la supervisión del Lcdo. José Jiménez.

2. Las funciones de un Técnico de Farmacia IPD comprenden las siguientes:
   a. salir a los pisos para recoger y despachar las órdenes médicas de pacientes
   b. admitidos en la institución;
   c. verificar los "stocks" de medicamentos que faltan en el piso;
   d. verificar los carros de paro;
   e. verificar que tuvieran los medicamentos y todo estuviera en orden.

3. Durante su empleo en el Hospital, el Sr. Obed Colón Cruz llegó a desempeñar otras posiciones que incluyeron: Gerente de Farmacia OPD, Agente Comprador en la Cafetería y Dietas, y finalmente, Agente Comprador IPD en Farmacia.

4. Efectivo el 29 de junio de 2016, el Sr. Obed Colón comenzó a desempeñarse como Agente Comprador del Departamento de Farmacia IPD.

5. Las funciones del Agente Comprador del Departamento de Farmacia IPD comprendían:
   a. las compras básicas del departamento;
   b. verificar que todo estuviera en orden;
   c. que las droguerías estuvieran despachando correctamente;
   d. pasar las estadísticas;
   e. atención de suplidores;
   f. mantenía en orden la temperatura de las neveras;
   g. seguimiento a la entrega de las hojas de revisión de los carros de paro, que los técnicos del departamento siempre fueran a hacerlas y las trajeran ya firmadas por los enfermeros;
   h. verificar como *[sic]* los expirados, hacer la gestión con las casas farmacéuticas para que los recojan y seguimiento a los créditos;
   i. conseguir medicamentos.

6. El 1 de febrero de 2021, el Sr. Obed Colón fue cesanteado de su empleo.

7. Al momento de su cesantía, el 1 de febrero de 2021, el Sr. Obed Colón ocupaba el puesto único de Agente

Comprador de Farmacia IPD, bajo la supervisión del Lcdo. José Jiménez. Para esa fecha, no había alguna persona de menos antigüedad ni de menor edad que el Sr. Obed Colón en su posición de Agente Comprador.

8. La razón para la cesantía del Sr. Obed Colón Cruz fue la merma en el volumen de servicio.

9. En el 2020, desde que comenzó la pandemia del COVID-19, el Hospital Metropolitano tuvo problemas en el volumen de servicios.

10. En el 2020 el Hospital Metropolitano recibió $5,499,012 en ayudas del gobierno federal para mitigar los efectos de la pandemia del COVID 19.

11. Del Hospital Metropolitano no haber recibido los $5,499,012 en ayudas del gobierno federal en el 2020 hubiese tenido un ingreso neto inferior al 2019 por la cantidad de $2,762,975.

12. A comienzos del año 2021, el Lcdo. Talavera elaboró un plan para la reducción de nómina, que implicó cesantear empleados.

13. Al momento de seleccionar el personal afectado, el Lcdo. Talavera evaluó las áreas que no impactaban el servicio directo al paciente.

14. Fue el Lcdo. José Talavera, el Administrador del Hospital, quien hizo la selección de los puestos administrativos que se eliminarían.

15. El Sr. Obed Colón reconoce que, en el año 2020, hubo comunicaciones de la administración dirigidas al control de sus gastos y medidas que se estaban tomando para atender la merma en el volumen de pacientes.

16. El Lcdo. José Jiménez (Director de Farmacia), fue quien asumió las funciones del Sr. Obed Colón luego de su terminación.

Así, concluyó que el despido del apelante fue por justa causa, debido a una disminución de ingresos y reorganización de operaciones como consecuencia del Covid-19.

Inconforme, el 20 de febrero de 2024, el señor Colón Cruz presentó un recurso de *Apelación* y solicitó la revisión de la

*Sentencia* emitida por el TPI. El Apelante realizó los siguientes señalamientos de error:

> Entiende el Apelante que el TPI alegadamente se equivocó al:
>
> **Primero:** Declarar Ha Lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente en la que determinó que el despido del apelante estuvo justificado por pérdidas en el negocio de la apelada, a pesar de que el TPI reconoció que la apelada tuvo ganancias millonarias en el mismo año del despido.
>
> **Segundo:** Declarar Ha Lugar la moción de sentencia sumaria presentada por la apelada y dictar sentencia sumariamente contrario a derecho puesto que sustentó su sentencia en prueba documental inadmisible y en manifestaciones inadmisibles por constituir ambas pruebas de referencia o declaraciones para beneficio propio (self-serving).

El 19 de marzo de 2024, el Hospital Metropolitano presentó su alegato en oposición.

Perfeccionado el recurso y examinados los documentos que obran en el expediente, estamos en posición de resolver.

**II.**

**-A-**

El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R.36, [...] permite a los tribunales disponer, parcial o totalmente, de litigios civiles en aquellas situaciones donde no exista controversia material de hecho que requiera ventilarse en un juicio plenario, y el derecho así lo permita. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). Mediante el mismo, se procura profundizar en las alegaciones para verificar si, en efecto, los hechos ameritan dilucidarse en un juicio. *Íd.* Este cauce sumario resulta beneficioso tanto para el tribunal, como para las partes en un pleito, pues se agiliza el proceso judicial, mientras simultáneamente se provee a los litigantes un mecanismo procesal encaminado a alcanzar un remedio justo, rápido y económico. *Íd.*

[A]l presentar una moción de sentencia sumaria, al amparo de [la] Regla 36.2, [se] deberá cumplir con los siguientes requisitos de forma, los cuales están preceptuados en la Regla 36.3 de Procedimiento Civil: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción sobre la cual se solicita la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales se debe dictar la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. *Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687 (2019).

Al considerar la solicitud, el Tribunal deberá asumir ciertos los hechos no controvertidos que se encuentran sustentados por los documentos presentados por el promovente. *E.L.A. v. Cole*, 164 DPR 608, 626 (2005). La inferencia razonable que pueda surgir de los hechos y de los documentos se debe interpretar en contra de quien solicita la sentencia sumaria, pues sólo procede si bajo ningún supuesto de hechos prevalece el promovido. *Íd.*, pág. 625. Conforme a esta normativa procesal, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. *León Torres v. Rivera Lebrón,* supra. Por el contrario, viene obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de la misma proceder en derecho. *Íd.*

En la oposición a una solicitud de sentencia sumaria, el promovido debe puntualizar aquellos hechos propuestos que pretende controvertir y, si así lo desea, someter hechos materiales adicionales que alega no están en disputa y que impiden que se dicte sentencia sumaria en su contra. *Íd.* Claro está, para cada uno de estos supuestos deberá hacer referencia a la prueba específica que sostiene su posición, según exigido por la Regla 36.3 de Procedimiento Civil. *Íd.* En otras palabras, la parte opositora tiene el peso de presentar evidencia sustancial que apoye los hechos materiales que alega están en disputa. *Íd.* Al evaluar los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia y ser consciente en todo momento que su determinación puede conllevar el que se prive a una de las partes de su "día en corte", componente integral del debido proceso de ley. *Íd.*

Sin embargo, la sentencia sumaria generalmente no procederá cuando existan controversias sobre hechos esenciales materiales, o si la controversia del caso está basada en elementos subjetivos como intención, propósitos mentales, negligencia o credibilidad. *Rivera Rodríguez v. Rivera Reyes*, 168 DPR 193, 212 (2006). Además, existen casos que no se deben resolver mediante sentencia sumaria porque resulta difícil reunir la verdad de los hechos mediante declaraciones juradas o deposiciones. *Jusino et als. v. Walgreens*, 155 DPR 560, 579 (2001). De igual modo, no es apropiado resolver por la vía sumaria "casos complejos o aquellos en los que estén presentes cuestiones de interés público". *Íd.*, pág. 579.

Por otro lado, sabido es que, cuando un Tribunal emita una sentencia, especificará los hechos que fueron probados y consignará separadamente sus conclusiones de derecho. 32 LPRA Ap. V, R. 42.2. En lo pertinente al caso, si el Tribunal deniega

una moción de sentencia sumaria, no concede todo el remedio solicitado o no resuelve la totalidad del pleito, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, expresa que "será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos […]"Lo anterior simplifica el desfile de prueba en el juicio, pues los hechos no controvertidos se consideran probados. *Ramos Pérez v. Univisión*, 178 DPR 200, 221 (2010).

Además, y según dispuesto por el Tribunal Supremo de Puerto Rico, los criterios de revisión apelativa ante una sentencia sumaria son los siguientes: (1) no se puede considerar prueba no presentada ante el nivel de instancia; (2) no se puede adjudicar hechos materiales en controversia; (3) la revisión apelativa es *de novo*; (4) se debe examinar el expediente de la manera más favorable hacia quien se opone a la solicitud de sentencia sumaria; (5) se debe observar que las mociones cumplan con los requisitos de la Regla 36 de Procedimiento Civil de 2009, *supra,* y lo discutido en *SLG Zapata Rivera v. JF Montalvo, 189 DPR 414 (2013)*; (6) debe exponer los hechos materiales controvertidos y los incontrovertidos si los hubiese; y (7) ante un caso donde no existan hechos materiales en controversia, el tribunal apelativo procederá a revisar *de novo* si el TPI aplicó correctamente el Derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

Asimismo, nuestro más Alto Foro señaló que:

[…] el Tribunal de Apelaciones debe: 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de formas codificados en la referida Regla 36, *supra*; 3) **revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32**

**LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos**; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas,* 199 DPR 664, 679 (2018). (Énfasis suplido).

Conforme a lo anterior, nos encontramos en la misma posición que el Tribunal de Primera Instancia para evaluar la procedencia de una sentencia sumaria. *González Santiago v. Baxter Healthcare,* 202 DPR 281 (2019). A tal efecto, nuestra revisión es una *de novo,* y el análisis debe regirse por las disposiciones de la Regla 36 de Procedimiento Civil, *supra,* y su jurisprudencia interpretativa. *Íd.* De esta manera, si encontramos que los hechos materiales realmente están incontrovertidos, debemos revisar de novo si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Íd.*

-B-

La Ley Núm. 80 de 30 de mayo de 1976, conocida también como la Ley de Despido Injustificado, según enmendada, 29 LPRA sec. 185a *et seq.* (en adelante, "Ley Núm. 80"), fue creada con el fin primordial de proteger, de manera más efectiva, el derecho del obrero puertorriqueño a la tenencia de su empleo. A su vez, procura desalentar la práctica de despedir a los empleados de forma injustificada y otorga a los trabajadores remedios justicieros y consustanciales con los daños causados por un despido injustificado. Véase: Exposición de Motivos de la Ley Núm. 80, supra.; SLG Zapata-Rivera v. J.F. Montalvo, 189 DPR 414, 424 (2013); Feliciano Martes v. Sheraton, 182 DPR 368 (2011).

El Artículo 2 de la Ley Núm. 80, 29 LPRA sec. 185b, detalla las circunstancias que constituyen "justa causa" para el despido e incluye motivos fundados en la conducta del empleado, así como circunstancias de índole empresarial. Así pues, las causas

atribuibles a los empleados que constituyen justa causa para el despido se preceptúan en el Artículo 2, y son las siguientes:

(a) Que el obrero siga un patrón de conducta impropia o desordenada.

(b) La actitud del empleado de no rendir su trabajo en forma eficiente o de hacerlo tardía y negligentemente o en violación de las normas de calidad del producto que se produce o maneja por el establecimiento.

(c) Violación reiterada por el empleado de las reglas y reglamentos razonables establecidas por el funcionamiento del establecimiento siempre que copia escrita de los mismos se haya suministrado oportunamente al empleado.

(d) Cierre total, temporero o parcial de las operaciones del establecimiento. En aquellos casos en que el patrono posea más de una oficina, fábrica, sucursal o planta, el cierre total, temporero o parcial de las operaciones de cualquiera de estos establecimientos donde labora el empleado despedido, constituirá justa causa para el despido a tenor con este Artículo.

(e) Los cambios tecnológicos o de **reorganización**, así como los de estilo, diseño o naturaleza del producto que se produce o maneja por el establecimiento y los cambios en los servicios rendidos al público.

**(f) Reducciones en empleo que se hacen necesarias debido a una reducción en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido** o con el propósito de aumentar la competitividad o productividad del establecimiento. (Énfasis suplido). 23 LPRA sec.185b.

Cuando se despidiesen empleados o empleadas por las razones indicadas en los incisos (d), (e) y (f) del Artículo 2 de la ley antes citada, el patrono estará obligado a retener con preferencia en el empleo a los empleados o empleadas de más antigüedad. Respecto a lo antes el Artículo 3 de la Ley Núm. 80, 29 LPRA sec. 185c establece lo siguiente:

En cualquier caso en que se despidiesen empleados por las razones indicadas en los incisos (d), (e) y (f) del Artículo 2 de esta Ley, el patrono estará obligado a retener con preferencia en el empleo a los empleados de más antigüedad siempre que subsistan puestos vacantes u ocupados por empleados de menos antigüedad en el empleo dentro de su clasificación ocupacional que puedan ser desempeñados por ellos, entendiéndose que se dará preferencia a los empleados despedidos en caso de que dentro de los seis (6) meses siguientes a su cesantía tuviere necesidad de emplear a

una persona en labores iguales o similares a las que desempeñaban dichos empleados al momento de su despido y dentro de su clasificación ocupacional, siguiéndose también el orden de antigüedad en la reposición.

Finalmente, no se considerará despido por justa causa aquel que se hace por el mero capricho del patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. *Srio. del Trabajo v. GP Inds., Inc.,* 153 DPR 223, 241 (2001). Conforme surge, el principio rector que gobierna el despido por justa causa dispuesto en el Artículo 2 de la Ley Núm. 80, *supra*, es aquel que delimita las circunstancias en que éste se produce. Es decir, cuando tiene su origen en alguna razón o motivo vinculado a la ordenada marcha y normal funcionamiento de una empresa y no en el libre arbitrio o capricho del patrono. *Íd.*

**-C-**

La prueba de referencia es aquella declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado. Regla 801(c) de Evidencia, 32 LPRA Ap. VI, R. 801(c); Toledo Maldonado v. Cartagena Ortiz, 132 DPR 249 (1992).

Como norma general, la prueba de referencia no será admisible en evidencia, salvo que de otra manera se disponga por ley. Regla 804 de Evidencia, 32 LPRA Ap. VI. R. 804. A manera de excepción, y en lo aquí pertinente, la Regla 805 (F), *supra*, de Evidencia dispone que los *récords de actividades que se realizan con regularidad* no están sujetos a la regla general de exclusión de prueba de referencia, aun cuando la persona declarante esté disponible como testigo. La propia Regla 805 (F), *supra*, define *récords de actividades que se realizan con regularidad* como:

Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan **preparado en o cerca del momento en que éstos surgieron**, por una persona que tiene conocimiento de

dichos asuntos, o mediante información transmitida por ésta, **si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad**, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, **según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada**, **o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(K)** o con algún estatuto que permita dicha certificación, a menos que la fuente de información, **el método o las circunstancias de su preparación inspiren falta de confiabilidad**. […] (Énfasis suplido).

Nuestro más alto foro ha expresado que, "[l]os fundamentos de esta excepción a la regla general de exclusión de prueba de referencia descansan en razones de necesidad, confiabilidad, experiencia y en el carácter rutinario del documento." *Nereida Muñiz Noriega v. Bonet*, 177 DPR 967 (2010).

Solo mediante la presentación de la antepuesta evidencia es que la parte que interesa someter como prueba los *récords de actividades que se realizan con regularidad* sienta adecuadamente las bases para su admisión y por tanto cumple con el requisito de autenticación. Así lo dispuso el Tribunal Supremo de Puerto Rico en *H.R. Stationary, Inc. v. E.L.A.*, 119 DPR 129 (1987), al discutir la derogada Regla 65 (F) de Evidencia, la cual es similar a la actual Regla 805 (F) de Evidencia, *supra*.

Por otro lado, surge de la precipitada Regla, que no será necesario el testimonio del custodio de unos récords u otro testigo que declare para autenticar los mismos y explicar el momento y método de su preparación. *Hato Rey Stationery v. ELA*, 119 DPR 129 (1987). El testimonio del custodio podrá sustituirse por una declaración jurada que cumpla con las disposiciones de la Regla 902 (K) de Evidencia. 32 LPRA Ap. VI, R. 902 (K). Conforme dispone la Regla 902 (K), *supra*, la certificación jurada deberá certificar que dicho récord:

(1) se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas

por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta;

(2) se llevó a cabo en el curso de la actividad realizada con regularidad, y

(3) se preparó como una práctica regular de dicha actividad.

Finalmente, sobre la presentación del récord en evidencia, la Regla 902 (K), *supra*, establece:

> **La parte que se proponga someter un récord como evidencia, conforme a lo dispuesto en este inciso, tendrá que notificar por escrito su intención a todas las partes contrarias. Además, tendrá que tener el récord y la declaración jurada disponibles para inspección con suficiente antelación a su presentación como evidencia a fin de brindar a la parte contraria una oportunidad justa para refutarlos.** (Énfasis suplido).

### III.

El apelante planteó, en esencia, que erró el TPI al haber desestimado la querella por entender que existen hechos en controversia, y por haber considerado prueba que fue objetada y erróneamente admitida.

Al revisar una sentencia sumaria, este foro intermedio debe examinar si la petición de sentencia sumaria, así como su oposición cumplieron con los requisitos de forma que establece la Regla 36 *supra*. Examinada la *Moción de Sentencia Sumaria* que presentó el Hospital Metropolitano, advertimos que ésta cumplió con los requisitos establecidos por nuestro ordenamiento procesal. Regla 36.3 (a) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3 (a).

En específico, de la solicitud surge que contiene una exposición breve de las alegaciones de las partes; los asuntos en controversia; la reclamación respecto a la cual se solicitó la sentencia sumaria; una relación concisa y organizada en párrafos numerados de todos los hechos esenciales y pertinentes que no están en controversia, con indicación de los documentos en donde éstos se establecen; las razones por las cuales debía ser dictada la

sentencia y el remedio que debía ser concedido. Regla 36.3 (a), *supra.* Por consiguiente, concluimos que el Hospital Metropolitano cumplió con los requisitos de forma que establecen nuestras Reglas de Procedimiento Civil.

De igual forma, la *Oposición a Solicitud de Sentencia Sumaria* presentada por el señor Colón Cruz cumplió sustancialmente con los requisitos formales que la Regla 36.3(b)(2) y (3) de Procedimiento Civil, 32 LPRA Ap. V, R.36.3(b)(2) y (3) exigen. Así, incluyó una lista de los hechos que la parte peticionaria identificó como incontrovertidos, para entonces proceder a admitir algunos y controvertir otros, con indicación de la prueba documental que tenía a su disposición a estos efectos.

Ahora bien, mediante el primer señalamiento de error, el señor Colón Cruz alega que erró el TPI al determinar que el despido estuvo justificado por pérdidas en el negocio, a pesar de que el Hospital Metropolitano obtuvo ganancias durante el año de las cesantías. Específicamente, sostiene que el Hospital Metropolitano no sufrió una disminución en sus ganancias, sino que, durante el 2020 obtuvo ganancias mayores en comparación con el 2019, las cuales alega que fueron reconocidas por el foro apelado. Adelantamos que el foro apelado no cometió el error señalado. Veamos.

Surge del expediente y de la prueba documental que, la cesantía del apelante se debió a una alegada disminución en los servicios del Hospital. La controversia ante nos gira en torno a determinar si el despido del señor Colón Cruz estuvo justificado tras una alegada disminución en el volumen de servicios del Hospital.

Recordemos que, el Artículo 2 (f) de la Ley Núm. 80, *supra*, considera como justa causa para el despido las reducciones en el volumen de producción, ventas o ganancias, anticipadas o que prevalecen al ocurrir el despido.

Tal y como sostiene el apelante, los Estados Financieros del Hospital Metropolitano, estipulados por las partes, demuestran una ganancia neta para el 2020 de $47,671,376, mayor a la de $46,574,789 del 2019. No obstante, surge que, durante el 2020, el apelado recibió una subvención federal de $5,499,012, dicha suma fue tomada en consideración al calcular la ganancia neta del 2020.

De igual manera, los mismos Estados Financieros evidencian que los ingresos netos por servicios al paciente para el 2020 fueron $32,685,649, menor a los $36,612,215 del 2019. Al comparar ambas cifras, se hace evidente la disminución en el volumen de servicios a pacientes durante el 2020.

La subvención federal otorgada en el 2020 ayudó al Hospital Metropolitano a mitigar los efectos de la reducción en servicios. Así, pues, el aumento reflejado en las ganancias netas del 2020 fue debido a las ayudas financieras recibidas. A inicios del 2021, cuando cesantearon al apelante, la concesión de ayudas financieras durante el año no estaba garantizada. Ante la reducción en el volumen de servicios y sin la garantía de obtener ayudas federales que ayudaran a mitigar los daños, el apelado recurrió a la disminución de personal.

Evidenciada la reducción en el volumen de servicios y visitas al Hospital Metropolitano, el foro apelado actuó correctamente al determinar que el despido del señor Colón Cruz estuvo justificado.

Por otro lado, en cuanto al segundo señalamiento de error, el apelante adujo que la declaración jurada de la señora Deborah Acevedo Santos no cumplió las disposiciones de la Regla 805 (F) para ser admisible. Particularmente, apuntó a que de la declaración jurada no surge que esta tenga conocimiento personal sobre cómo se prepararon los alegados récords de negocio, en contravención con los requisitos de forma dispuestos en la Regla 902 (K), *supra*, por lo que no puede corroborar la veracidad de su contenido.

Particularmente, el apelante impugna la admisión de los siguientes récords de negocio presentados por el apelado:

1. Anejo 8, Reportes Estadísticos de Visitas y Servicios
2. Anejo 9, Reporte Presupuesto e Ingresos IPD
3. Anejo 10, Reporte Presupuesto e Ingresos OPD
4. Anejo 11, Plan de Ajuste de Gastos
5. Anejo 13, Comunicación del 20 de enero de 2021
6. Anejo 14, Estados Financieros Interinos de Enero 2021
7. Anejo 16, Lista del Personal Afectado

En cambio, el apelado alega que la declaración jurada cumplió con los requisitos necesarios para autenticar y admitir en evidencia los récords de negocio presentados en su solicitud de sentencia sumaria.

Al examinar la declaración jurada de la señora Acevedo Santos, nos percatamos de que la misma cumple con las disposiciones de la Regla 902 (K) de Evidencia, *supra*. Como ya discutimos, la referida Regla establece que la declaración jurada deberá certificar que dicho récord: **(1) se preparó en o cerca del momento en que ocurrieron los sucesos o las actividades mencionadas por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por esta; (2) se llevó a cabo en el curso de la actividad realizada con regularidad, y; (3) se preparó como una práctica regular de dicha actividad**. (Énfasis suplido).

Resulta forzoso concluir que no erró el TPI al admitir en evidencia récords de negocio, ya que fueron debidamente autenticados mediante la presentación de la declaración jurada de su custodio.

No obstante, suponiendo que no fueran admisibles, del expediente surge suficiente evidencia para sostener las determinaciones de hechos realizadas por el foro apelado. Entre la prueba admitida en evidencia se encuentra:

1. Deposición del señor Colón Cruz

2. Deposición de José Talavera Reyes, Director Ejecutivo
3. Deposición de Heriberto Román Ponce, Director de Finanzas desde enero del 2018 hasta mayo del 2021
4. Declaración Jurada de Ebony Walters González, Coordinadora de Recursos Humanos
5. Estados Financieros de 2019 hasta el 30 de diciembre de 2020

Un examen de la referida prueba documental basta para evidenciar la merma en el volumen de servicios del Hospital. Por lo demás, el expediente que nos ocupa nos ha permitido constatar que las determinaciones emitidas por el TPI encuentran completo apoyo legal y fáctico en la prueba documental sometida a nuestro escrutinio. De este modo, por no existir controversia de hechos alguna que amerite el cauce ordinario de los procedimientos, sostenemos la corrección del pronunciamiento ante nos impugnado.

**IV.**

Por los fundamentos expuestos, se *Confirma* la *Sentencia* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones